**Hsuan WEI, Plaintiff-Appellee,**

v.

**Robert ROBINSON, District Director, etc., Defendant-Appellant.**

**No. 11871.**

United States Court of Appeals Seventh Circuit.

June 28, 1957.

Robert Tieken, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for appellant. Richard C. Bleloch, John H. Bickley, Jr., Asst. U. S. Attys., Chicago, Ill., of counsel.

Franklin A. Cole, David R. Loewenberg, Chicago, Ill., for plaintiff-appellee.

Loewenberg, Cole, Wishner, Epstein & Marlow, Chicago, Ill., of counsel.

Before MAJOR, FINNEGAN and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

Wei, plaintiff-alien, successfully tested the legality of the deportation order entered against him in a declaratory judgment action brought under § 10 of the Administrative Procedure Act, 60 Stat. 243, 5 U.S.C.A. § 1009. See also, Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868. By his complaint Wei also asked for a judicial declaration that: (1) section 241.2(c), 8 C.F.R. contravenes U. S. Constitution, Art. I, Section I, and (2) the warrant served on him is invalid. By way of additional relief, plaintiff seeks reversal of the order, issued by the Immigration and Naturalization Service, refusing him voluntary departure, on the basis that the Service acted arbitrarily and capriciously. Wei also requests the right to voluntarily depart the United States in lieu of deportation. After the government filed its responsive pleading, and the record made before the Service was filed below, it moved for summary judgment under Rule 56(b) and (c), Federal Rules of Civil Procedure, 28 U.S.C. From what appears in this record, the district judge, then discussed the matter with counsel for the parties, denied that motion for summary judgment and ruled that: "* * * the order of deportation heretofore entered by defendant [District Director of Immigration and Naturalization] against plaintiff be and the same hereby is declared null and void and of no force and effect, and the same is hereby vacated * * * plaintiff be and hereby is released from parole and * * * said parole be terminated instanter." From that brief order, containing no other findings of fact and conclusions of law, the government has appealed.

A chronological analysis of the significant facts facilitates the approach to questions arising in this case and, those tabulated below signaled with an asterisk are facts drawn from the stipulation of the parties:

*September 12, 1927—Wei was born at an unknown place in China, Manchuria, or Russia.

January 8, 1938—Entered Tientsin St. Louis High School; graduated December 22, 1944.

January 8, 1945—Enrolled in Military Officer's School; graduated September 18, 1948.

1948 until early September 1952—Wei served continuously as an officer in the Chinese Nationalist Armed Forces, transferring to the Chinese Marine Corps in 1949.

*1952—Wei selected to go to the United States for training with the United Marine Corps.

*September 2, 1952—Ministry of Foreign affairs at Taipe; issued Wei a Chinese official passport No. O-527-0139. This passport was valid until December 1, 1953. (Outside of the facts stipulated in writing it appears that from an oral stipulation of the parties during a hearing before the Service that: "the validity of this passport was extended until August 31, 1954.")

*September 7, 1952—Wei admitted to the United States for training under the M.D.A.P. Program for a period, for five months. Wei "was admitted for duration of status under Section 3(1) of the Immigration Act of 1924."

December 24, 1952—Effective date of Immigration and Nationality Act of 1952.

October 8, 1954—Wei's passport turned over to the Service.

*May or early June, 1954—Wei completed his military training in the United States and was ordered to return to Formosa.

*June 10–11, 1954—While awaiting transportation to Formosa at the Twelfth Naval District Establishment at San Francisco, Wei advised a Colonel of the Chinese Nationalist Army that he would not return to Formosa; Wei departed for Chicago, Illinois by bus.

*June 23, 1954—Wei employed as an elevator operator at the Orrington Hotel, Evanston, Illinois, and at the time he possessed Social Security Card No. 355–30–0287.

*July 6, 1954—Wei taken to San Francisco, California by United States Naval Officers.

*July 9, 1954—Warrant of arrest issued by the District Director, Immigration and Naturalization Service, San Francisco served on Wei who was charged as being in the United States in violation of § 241 (a) (9) of the Act; that he had been admitted as a nonimmigrant and failed to maintain the status of a government official granted under § 3(1) of the Immigration Act of 1924.

August 31, 1954—Expiration date of passport under extension of time.

September 27, 1954—Waiver, by Wei, of rights, privileges, exemptions and immunities under § 247(b) of the Immigration and Nationality Act of 1952.

March 2, 1955—Hearing on Wei's claims under § 6, Refugee Relief Act.

September 28, 1955—Special inquiry officer entered order for Wei's deportation and denied discretionary relief. Appeal later denied by the Board of Immigration Appeals.

February 6, 1956—Complaint for declaratory judgment filed.

Clearly from the foregoing time-table, the effective date of the Immigration and Nationality Act of 1952 followed after Wei legally entered the United States, 66 Stat. 281, 8 U.S.C.A. § 1101 et seq. His entry was grounded in the authority

granted by § 3(1) of the Immigration Act of 1924. 43 Stat. 153, 8 U.S.C. § 203.* Yet the 1924 Act was expressly repealed by incorporating § 403(a) (23) as an integral part of the 1952 legislation (66 Stat. 279) which, in turn, carries a savings clause[1] codified as § 405. 66 Stat. 280, 8 U.S.C.A. § 1101 note. That clause is invoked on Wei's behalf in an argument for the applicability of § 3 (1) of the Immigration Act of 1924 as a factor determinative of his current status.

For § 3 of the 1924 Act provides: "When used in this Act the term 'immigrant' means any alien departing from any place outside the United States destined for the United States, *except* (1) an accredited official of a foreign government recognized by the Government of the United States * * *" and, § 3 was governed by § 15: "The admission to the United States of an alien excepted from the class of immigrants by clause (1) * * * of section 3 * * * *shall be for such time and under such conditions* as may be by regulations prescribed * * * to *insure* that, at the *expiration of such time or upon failure to maintain the status under which admitted, he will depart from the United States: Provided:* That no alien who has been, or who may hereafter be, admitted into the United States under clause (1)

* * * of section 3, as an official of a foreign government * * * shall be required to depart from the United States without the approval of the Secretary of State." 43 Stat. 162, 47 Stat. 524, 54 Stat. 711, 59 Stat. 669, 8 U.S.C. § 215.† (Italics ours). Our tabulation of facts reflect Wei's admission to the United States "for training under the M.D.A. Program for a period of five months" under a passport valid until December 1, 1953, later extended to August 31, 1954. It is an inescapable stipulated fact that: "* * * Wei, completed his military training in the United States on or about May or the early part of June, 1954, at which time he was ordered to return to Formosa." Time, status, and purpose were essential for qualification under the 1924 Act. Wei was admitted for training purposes and that objective was concededly achieved.

There is little, if any, critical difference in Wei's position under either the 1924 or 1952 Acts. United States ex rel. Hintopoulas v. Shaughnessy, 1957, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 is determinative on the question of discretion in denying voluntary departure.

▮ To be sure these parties agree upon the fact that Wei's passport was extended to August 31, 1954. Yet § 3 is written in the alternative making failure to maintain status under which

---

* Now 8 U.S.C.A. § 1101(a) (15) (A).

[1]. "Sec. 405. (a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, *warrant of arrest*, order or *warrant of deportation*, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or *any status, condition, right* in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, *done or existing*, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes, conditions, rights, acts, things, liabilities, obligations, or matters

the statutes or parts of statutes repealed by this Act are, *unless otherwise specifically* provided therein, *hereby continued in force* and effect. When an immigrant, in possession of an unexpired immigrant visa issued prior to the effective date of this Act, makes application for admission, his admissibility shall be determined under the provisions of law in effect on the date of the issuance of such visa. An application for suspension of deportation under section 19 of the Immigration Act of 1917, as amended, or for adjustment of status under section 4 of the Displaced Persons Act of 1948, as amended, which is pending on the date of enactment of this Act, shall be regarded as a proceeding within the meaning of this subsection."

† Now 8 U.S.C.A. § 1251(e).

an alien is admitted the statutory basis for deportation, as implemented by regulations.[2] With commendable candor the government, in its brief, tells us: "* * * it is admitted that the regulations promulgated under Section 3(1) of the Act of 1924, as to violation of status are not too clear. * * *" These earlier regulations, however, have been superseded by a new set effective December 31, 1952, 8 C.F.R. § 214.2 which were published in 17 Federal Register 11488 (December 19, 1952). See The Federal Register Act, 49 Stat. 500 (1935), 44 U.S.C.A. § 303 and Federal Crop Insurance v. Merrill, 1947, 332 U.S. 380, 385, 68 S.Ct. 1, 92 L.Ed. 10, holding such publication to constitute "legal notice." Contents of the Federal Register and of the Code of Federal Regulations are prima facie evidence of the original text and are required to be judicially noticed. 49 Stat. 502, 50 Stat. 304, 44 U.S.C.A. §§ 307, 311. Wei's position, in substance, would require such an interpretation of the savings clause, § 405, embedded in the 1952 Act, as preserving the regulations implementing the 1924 Act rather than the current following ones:

"§ 214.2 Conditions of nonimmigrant status. An alien found admissible as a nonimmigrant under the Immigration and Nationality Act shall be admitted to the United States, and an alien after admission to the United States as a nonimmi-

grant or after acquisition of a nonimmigrant status under the Immigration and Nationality Act or any prior act shall be permitted to remain in the United States only upon the following conditions:

"(a) That while in the United States he will maintain the particular nonimmigrant status under which he was admitted or such other status as he may acquire in accordance with the provisions of the Immigration and Nationality Act or which he may have acquired in accordance with the provisions of any prior law.

"(b) That he will depart from the United States within the period of his admission or any authorized extension thereof.

"(c) That while in the United States he will not engage in any employment or activity inconsistent with and not essential to the status under which he is in the United States unless such employment or activity has first been authorized by the district director or the officer in charge having administrative jurisdiction over the alien's place of temporary residence in the United States.

"(d) That he will not remain in the United States beyond a date six months, or in the case of a nonim-

2. Section 117.1. Definitions.
"(B) 'Foreign government official' means an alien who is an accredited officer or an accredited employee of a foreign government recognized by the Government of the United States, or a member of the immediate family of such alien, and is in possession of a visa entitling him to apply for admission to the United States as a non-immigrant under the provisions of Section 3(1) of the Immigration Act of 1924 as amended (43 Stat. 154; 54 Stat. 711; 8 U.S.C. 203), and the presentation of such visa at a port of entry of the United States shall be considered prima facie evidence of such status. * * *"
Section 117.4. Time for which Admitted.
(A) A foreign government official shall be admitted for so long a period as he

shall maintain his status as a foreign government official and the Secretary of State continues to recognize him as such.
Section 117.7. Violation of Status.
(A) An alien admitted to the United States under the provisions of this part shall be deemed to have remained in the United States for a longer time than permitted by the conditions of his admission if;
(1) He is found in the United States after he ceases to have the status under which admitted; or
(3) He violates or is found to have violated in any other way the conditions under which he was admitted or under which he was permitted to remain in the United States temporarily for an additional period." 8 U.S.C. 786–1, Part 117, 15 F.R. 8104.

migrant admitted prior to the effective date of the Immigration and Nationality Act, two months, prior to the end of the period during which he will be eligible for readmission to the country whence, he came or for admission to some other country, as evidenced by a valid passport or other travel document.

"(e) That he will fulfill such other conditions as the admitting immigration officer, in his discretion, may impose or may have imposed to insure that he will depart from the United States at the expiration of the time for which he was admitted, and *that he will maintain the status under which he was admitted* or which he may have lawfully acquired subsequent to his admission." (Italics supplied.)

The italicized phrase would be critical here unless some other legalistic reason overrides applicability of that clear language. When Mr. Justice Clark wrote the majority opinion in Shomberg v. United States, 1955, 348 U.S. 540, 546, 75 S.Ct. 509, 512, 99 L.Ed. 624, he carefully pointed out, regarding § 405 of the 1952 Act:

"If the grounds for deportation are the same under the prior law as under the new Act, then nothing in the new Act affects petitioner; it is clear that rights under the savings clause have not been infringed even if there is no specific exception. Only where something in the new law introduces a change, thereby affecting one's status under the old law, is the savings clause called into play. Only then is a specific exception to § 405 required."

In its last analysis Wei was arrested and ruled deportable by the Service on this conclusion of law: "That under Section 241(a)(9) of the Immigration and Nationality Act, the respondent is subject to deportation on the ground that he was admitted as a nonimmigrant and failed to maintain the nonimmigrant status in which he was admitted, to wit, a government official as described in

Section 3(1) of the Immigration Act of 1924." That is virtually the language, save for the reference to § 3(1), of § 241(a)(9) in the 1952 Act containing standards for determining classes of deportable aliens.

■ Under either Act, Wei possessed a privilege pivoting on his continued maintenance of status. Even if the current savings clause were utilized, Wei would be still compelled to maintain his status. There is nothing in either Act allowing Wei, or any other alien, from parleying permissive entry into permanent domicile by the simple expedient of refusing to leave America. For all we know Wei may still hold a commission in the Chinese Nationalist armed forces, but his American Military training at the Marine Corps School, Quantico, Virginia, is long since officially terminated. Indeed, Wei's awareness of the reason for his permissive entry is exhibited in the following examination of him during proceedings before the examining officer of the Service:

"Q. Now you were sent here to the United States for what purpose? A. For training.

"Q. For what purpose? A. For training—the instructions that I received. My orders plainly state that I will be sent to the United States for training period.

"Q. In what particular field? A. In the field of Marine."

Section 15 of the 1924 Act, already quoted, manifests Congressional insistence that aliens, in Wei's class, maintain their status under applicable regulations. There is marked affinity between wording in § 15 of the 1924 Act, preventing required departure from the United States "without the approval of the Secretary of State" and § 241(d) in the 1952 Act:

"* * * Except as otherwise specifically provided in this section, the provisions of this section shall be applicable to all aliens belonging to any of the classes enumerated in subsection (a), notwithstanding (1)

that any such alien entered the United States *prior to the date* of enactment of this Act, or (2) that the facts, by reason of which any such alien belongs to any of the classes enumerated in subsection (a) occurred prior to the date of enactment of this Act.

"(e) An alien, admitted as a nonimmigrant under the provisions of either section 101(a) (15) (A) (i) or 101(a)(15)(G)(i), and who fails to maintain a status under either of those provisions, *shall not be required to depart from the United States without the approval of the Secretary of State,* unless such alien is subject to deportation under subsection (a)(6) or (7) of this section." (Italics supplied.)

Among those regulations effective September 28, 1950, to which we have already referred, we find that § 117.7(b) provided:

"Any alien to whom paragraph (a) of this section is applicable shall be made the subject of deportation proceedings in accordance with the provisions of section 14 of the Immigration Act of 1924 (43 Stat. 162; 8 U.S.C. 214) * * * with respect to aliens who have been admitted as foreign government officials, the Secretary of State shall be notified at once of the contemplation of institution of such proceedings: *Provided further,* That with respect to aliens who have been admitted as foreign government officials, departure from the United States shall not be required without the prior approval of the Secretary of State, except that such approval shall not be required in the case of any alien who would be subject to exclusion from the United States under the provisions of section 1 of the Act of October 16, 1918, as amended, if he were applying for admission." 15 F.R. 8104, Nov. 28, 1950; 8 C.F.R. at page 23, 1951 Cum.Pocket Supp.

Under either Act, and the regulations applicable to the 1924 legislation, action by the Secretary of State is apparently contemplated.

When interpreting § 405 of the Immigration and Nationality Act of 1952, 66 Stat. 280, in United States v. Menasche, 1955, 348 U.S. 528, 535, 75 S.Ct. 513, 518, 99 L.Ed. 615, the Court speaking through Mr. Justice Clark took this view:

"The whole development of this general savings clause, its predecessors accompanying each of the recent codifications in the field of immigration and naturalization, manifests a well-established congressional policy not to strip aliens of advantages gained under prior laws. The consistent broadening of the savings provision, particularly in its general terminology, indicates that this policy of preservation was intended to apply to matters both within and without the specific contemplation of Congress."

Yet we think the weakness of Wei's position under the 1924 Act, and for that matter under the 1952 Act, lies in the uncontroverted fact that when his military training in the United States was completed some time in June 1954, "he was then ordered to return to Formosa." If the Secretary of State's action was required it was, we assume, in June 1954. Wei produced no evidence concerning the Secretary of State, and apparently failed to urge the point before reaching our court. Obedience of the travel order indicates his acceptance of the command. We think he waived action by the Secretary of State either by following the order until arriving in San Francisco, or by subsequently disrespecting it. In any event if the Secretary's approval were constricted to some other convenient meaning of the word "depart," found in the 1924 Act, the point should have been raised long before this. Indeed by applying for relief under § 6 of the Relief Act of 1952, 67 Stat. 400, 50 U.S.C.A.Appen-

dix, § 1971d, Wei demonstrated an acute awareness of his vulnerable position. Nor should his waiver, under § 247(b) of the 1952 Act be lightly brushed aside.

- We find nothing in the 1924 Act helpful to Wei's case. He impaired his status by refusing, and articulating his rejection, to return to Formosa and his subsequent employment simply buttresses the announced relinquishment. Wei was not admitted to this country for the purposes of becoming a civilian employee of private business. Compare: Yee Si v. Boyd, 9 Cir., 1957, 243 F.2d 203. Whether the statute or regulations omit mention of, or inhibit nonimmigrant aliens from, taking employment is beside the mark. The statutory standard under either Act dictates maintenance of status consonant with the purpose for which the alien received the privilege of admission.

We are not unmindful of the passage in Shaughnessy v. U. S. ex rel. Mezei, 1953, 345 U.S. 206, 212, 73 S.Ct. 625, 629, 97 L.Ed. 956: "It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law * * * (cases collected)." But after examining the proceedings of the hearings held by the Immigration and Naturalization Service we are satisfied that Wei was accorded procedural due process in light of the whole record. Exclusionary rules under the modern view are of greater moment in jury trials. See e.g. United States ex rel. Vajtauer v. Commissioner, 1927, 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560. We are aware of the Regulation of the Service, 8 Code Fed.Regs. § 150.1 (c) cited in Bridges v. Wixon, 1945, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 and § 242(b) of the 1952 Act. But this record simply shows objections interposed by Wei's counsel to various exhibits without any requests by him to cross-examine the authors of the documents. However such evidence fails, in our opinion, to infect or dilute the evidentiary support for the deportation order. Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868; United States ex rel. Schlimmgen v. Jordan, 7 Cir., 1948, 164 F.2d 633, 634; Singh v. District Director, 9 Cir., 1938, 96 F.2d 969, 971.

It is unnecessary, if not impractical, that there be a statutory interdiction against employment in this instance. The power to make regulations in connection with maintaining status underlying admission to this country was vested in the administrator of either Act. "The judicial approval accorded these 'broad' standards for administrative action is a reflection of the necessities of modern legislation dealing with complex economic and social problems. * * * The legislative process would frequently bog down if Congress were constitutionally required to appraise beforehand the myriad situations to which it wishes a particular policy to be applied and to formulate specific rules for each situation. Necessity therefore fixes a point beyond which it is unreasonable and impracticable to compel Congress to prescribe detailed rules; it then becomes constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority. Private rights are protected by access to the courts to test the application of the policy in the light of these legislative declarations. Such is the situation here." American Power & Light Co. v. S. E. C., 1946, 329 U.S. 90, 67 S.Ct. 133, 142, 91 L.Ed. 103. Parenthetically we also mention the frequent upholding of retroactive statutes since the constitutional prohibition of *ex post facto* laws has always been limited to criminal law. Calder v. Bull, 1798, 3 Dall. 386, 3 U.S. 386, 1 L.Ed. 648. And for a trenchant discussion of retroactive interpretative rules by administrative agencies see Davis, Administrative Law § 61 (1951).

The judgment appealed from is reversed and the cause remanded with di-

rections to the district court to grant the defendant Director's motion for summary judgment.

Reversed and remanded with directions.