MATTER OF MILIAN

In Adjustment of Status Proceedings

A-18818658

*Decided by Acting Regional Commissioner February 6, 1970*

An alien, not a native or citizen of Cuba, who was inspected and admitted as a nonimmigrant subsequent to January 1, 1959, who has been physically present in the United States for at least 2 years and who is residing with her husband in the United States, is, as the spouse of a native and citizen of Cuba who was paroled into the United States subsequent to January 1, 1959 and has been physically present in the United States for at least 2 years, eligible to apply for adjustment of status under section 1 of the Act of November 2, 1966, notwithstanding her marriage to such native and citizen of Cuba occurred subsequent to the latter's adjustment of status under the provisions of that Act.

This case comes forward by certification from the District Director, Miami, Florida, who denied the application on the ground that the applicant is statutorily ineligible for the benefits of section 1 of the Act of November 2, 1966.

The applicant is a native and citizen of Nicaragua who last arrived in the United States on June 11, 1968 and was admitted as a nonimmigrant visitor. She was granted extensions of stay, the last to expire on March 11, 1970. She has resided in the United States from September 15, 1967 through April 14, 1968 and from June 11, 1968 to the present, a period well over two years. The record establishes that the applicant was married on October 28, 1968 to a native and citizen of Cuba who is an alien lawfully admitted to the United States for permanent residence. The status of the applicant's spouse had been adjusted to that of lawful permanent resident on June 30, 1968 under the provisions of section 1 of the Act of November 2, 1966.

The District Director has denied the application on the ground that the applicant's husband is not an alien described in section 1 the Act of November 2, 1966. The District Director states that alien so described is one who:

Is a native or citizen of Cuba and

2. has been inspected and admitted or paroled into the United States subsequent to January 1, 1959, and
3. has been physically present in the United States for at least two years, if the alien
4. makes application for such adjustment and
5. is eligible to receive an immigrant visa and
6. is admissible to the United States for permanent residence.

The District Director further states that since the applicant's husband, as a legal permanent resident, cannot receive an immigrant visa he is not an alien described in section 1 and since the applicant's marriage followed his acquisition of that status she is not entitled to the benefits of section 1.

The statement submitted by the applicant for consideration on certification urges that since her husband's status was adjusted pursuant to section 1 (*supra*), he is an alien described in that subsection. She further urges that she is residing in the United States with her husband and that the provisions of section 1 are therefore applicable to her.

Section 1 of the Act of November 2, 1966 provides:

That, notwithstanding the provisions of section 245(c) of the Immigration and Nationality Act, the status of any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959 and has been physically present in the United States for at least two years, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, and the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence. Upon approval of such an application for adjustment of status, the Attorney General shall create a record of the alien's admission for permanent residence as of a date thirty months prior to the filing of such an application or the date of his last arrival into the United States, whichever date is later. The provisions of this Act shall be applicable to the spouse and child of any alien described in this subsection, regardless of their citizenship and place of birth, who are residing with such alien in the United States.

The District Director's denial is based on his interpretation of what constitutes an alien described in section 1 of the Act of November 2, 1966. We believe that he has gone beyond the description of the alien described in section 1 when he includes the last three conditions enumerated in his order, *i.e.*, that such alien make application for adjustment of status, that he is eligible to receive an immigrant visa and that he is admissible to the United States for permanent residence. These are not a part of a description of an alien but rather an action and conditions that an alien may take and must meet.

The reference in section 1 to a description of an alien can only apply to an alien who:

1. is a native or citizen of Cuba,
2. who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959, and
3. who has been physically present in the United States for at least two years.

That Congress intended this description to apply is made evident in section 2 where they state: "In the case of any alien described in section 1 of this Act who, . . . has been admitted into the United States for permanent residence . . ." If the description stated by the District Director was controlling then obviously no alien under section 2 would be eligible for the benefits of that section since they could never meet the description of section 1 having been admitted for permanent residence.

Clearly the applicant's spouse fits the description as set forth by Congress:

1. He is a native or citizen of Cuba.
2. He was paroled into the United States on July 26, 1962.
3. He has been physically present in the United States since 1962.

That the Service acknowledges this status is evidenced by the adjustment of status to that of permanent residence granted him under section 1 (supra) on June 30, 1968.

Section 1 (supra) provides benefits to the spouse and child of the principal alien described therein. The statute does not require that the marriage, or the application for adjustment of status, take place prior to, simultaneously with or subsequent to the principal alien's adjustment of status to permanent residence. It does require the spouse and child to be eligible under section 1 except for the citizenship, or nativity requirement and to be residing with such alien in the United States. It is, of course, elementary that Congress could easily have restricted benefits to spouses of record as of the date of adjustment. There is no such restriction in the language of the Act.

We find that the applicant's husband is an alien described in the Act of November 2, 1966, that the applicant is the spouse of such alien and has been inspected and admitted to the United States, that she has been physically present in the United States for two years and that she is residing with her husband in the United States.

ORDER: The decision of the District Director, Miami, Florida, reversed and the applicant's request for adjustment of status permanent residence is granted conditioned upon issuance of a number applicable to Western Hemisphere natives.

MATTER OF MARTINEZ AND LONDONO*

In Deportation Proceedings

A-18618218

A-18623304

*Decided by Board February 11, 1970*

A nonimmigrant visitor for pleasure who accepts employment thereby fails
to comply with the conditions of his status and is deportable under section
241 (a) (9) of the Immigration and Nationality Act. [*Matter of Wong*, 11
I. & N. Dec. 704, reaffirmed.]

CHARGE:

Order: Act of 1952—Section 241 (a) (9) [8 U.S.C. 1251 (a) (9)]—Visitor—
failed to comply (both).

ON BEHALF OF RESPONDENTS:       ON BEHALF OF SERVICE:
Leon Rosen, Esquire                   Clay Doughty
11 West 42d Street                   Appellate Trial Attorney
New York, New York 10036
(Brief filed)

The cases come forward on appeal by the respondents from the
decision of the special inquiry officer who found them deportable
as charged but granted the privilege of voluntary departure with
an alternate order that if they did not leave the United States
within 30 days, they be deported to Colombia. The respondents
admit the allegations of fact contained in the orders to show
cause but both deny that they are deportable as charged.

The respondents are unmarried male aliens, native and citizens
of Colombia, who were admitted to the United States as nonim-
migrant visitors for pleasure. Martinez was admitted at New
York on March 1, 1969 and Londono was admitted at Miami,
Florida on March 17, 1969. After admission both respondents
obtained employment at the same corporation in Hauppauge, New
York, where they are presently working. The period of time for
which they were permitted to remain in the United States has

---

* Reaffirmed. See 433 F.2d 635 (1970).

since expired. Because of accepting employment while in the United States as nonimmigrants they were found deportable by the special inquiry officer as being in violation of section 241(a)(9) of the Immigration and Nationality Act, in that, after admission as nonimmigrants under section 101(a)(15) of the Act they failed to comply with the conditions of such status.

Counsel argues that these respondents are not deportable as charged because neither the Immigration and Nationality Act of 1952, as amended, nor any regulation promulgated by the Attorney General, prohibits a visitor for pleasure from obtaining employment during his sojourn in the United States. He points out, and it is conceded by the Service, that there is no specific section of the Act which sets forth that employment is precluded for a nonimmigrant. Counsel then alludes to the portion of section 214(a) of the Immigration and Nationality Act that provides for the admission to the United States of nonimmigrants "at such time and under such conditions as the Attorney General may by regulations prescribe", and then points out that the Attorney General has never prescribed a regulation prohibiting employment by a nonimmigrant. Counsel contends that this being the case the respondents did not fail to comply with the conditions of heir entry and are thus not deportable under section 241(a)(9) f the Immigration and Nationality Act. The special inquiry fficer rejected this argument, and, after careful study of the 1atter, we will affirm his decision that the respondents are eportable as charged.

Counsel concedes that the exact question now raised has been 1nsidered by us in a number of previous cases [1] but argues that .ese decisions are not in accordance with the applicable provi-)ns of law and that the Board should now give further study to is specific question.

All of the cases cited above deal with the question of whether a nimmigrant who has been admitted for a specific purpose is titled during his brief stay in the United States to accept ployment, and all the cases hold that he is not. Prior to August 1958, 8 CFR 214.2(c) specifically prohibited the employment of 1onimmigrant. On that date and on several occasions subse-ant thereto substantial portions of the Code of Federal Regula-ns and the Immigration and Nationality Act which related to

---

*Matter of Boroumand*, Interim Decision No. 1983 (BIA, 1969); *Matter of* ɪg, 11 I. & N. Dec. 704 (BIA, 1966); *Matter of Garvey*, 10 I. & N. Dec. (BIA, 1964); *Matter of S—*, 8 I. & N. Dec. 574 (BIA, 1960); see also v. *Robinson*, 246 F.2d 739 (7 Cir., 1957).

the admission of nonimmigrants were revised and expanded. 8 CFR 214.2(c) was rescinded and on October 3, 1965, section 212(a)(14) of the Immigration and Nationality Act, which contains the labor certification provisions applying to aliens who come to the United States to perform skilled or unskilled work, became law.

In the case of *Wei* v. *Robinson, supra,* which was decided when 8 CFR 214.2(c) was in effect, the court said, on page 746, that even if there was no specific proscription against employment by nonimmigrants, it would be impractical and unnecessary that there be such a statutory interdiction in the case before it. In that case *Wei* had been admitted to the United States temporarily for the specific purpose of obtaining military training from the United States Army. He completed his training course and then, instead of returning to his native country of Formosa, he remained in the United States and obtained employment. The court held that this was at such variance with the purpose for which he was admitted that he had obviously failed to maintain the nonimmigrant status under which he was permitted to be in the United States and he was deportable under section 241(a)(9) of the Act.

*Matter of Bouroumand, Matter of Garvey* and *Matter of S——, supra,* all decided since the rescission of 8 CFR 214.2(c), held that nonimmigrant students who accepted employment without permission had failed to comply with the conditions of their status. In *Matter of Wong, supra,* which is on all fours with the present case, the respondent was a temporary visitor for pleasure who accepted unauthorized gainful employment, and we held that this was inconsistent with his status and violated the terms of his admission and he was thus deportable. We are not disposed to reverse our decisions in these cases.

Although the present Act and the regulations pertaining thereto contain no specific prohibition against employment by nonimmigrant visitors, we hold that such provision is unnecessary. We call attention to the intent of Congress as set forth in Senate Report No. 1137, 82d Congress, 2d Session, page 19, in which the Judiciary Committee of the Senate in explaining the term "temporary visitor" among other things stated: "Under no circumstances are aliens admitted as temporary visitors for pleasure to be permitted to work." Also, looking at the phrase "temporary visitor for pleasure" in its plain and generally understood meaning, we cannot conclude that such visitor who obtains employment is carrying out the purpose for which he was admitted. In

485

the instant cases the respondents are gainfully employed five days a week, eight hours a day. This renders it impossible to characterize their being in the United States as visitors for pleasure.

In reaching this conclusion we do not rely on a definition of "visitor for pleasure" promulgated by the Department of State as 22 CFR 41.25, which definition was alluded to in *Matter of Wong, supra*. That regulation stated that the term "pleasure" as used in section 101(a)(15)(B) of the Immigration and Nationality Act refers to legitimate activities of a recreational character, including tourism, amusement, visit with friends or relatives and rest. Counsel contends in his brief and at oral argument that the Attorney General simply cannot adopt a State Department regulation because Congress did not empower the Secretary of State to promulgate a regulation governing the conditions of admission of a nonimmigrant, but rather it specifically empowered the Attorney General to do so. However, since our decision is in no way based on the State Department regulation, the question raised is moot and it is not necessary for us to further consider it. Further, our decision in the cases before us is not based in any way upon the Form FS 257A, which presumably was handed to the respondents when they entered the United States, which contains a notice to the alien who enters on a temporary visa that he is not permitted to work.

Finally, the present law is replete with requirements and conditions relative to those who can work. For instance, under section 101(a)(15)(H) special classes of nonimmigrant aliens are admitted to perform temporary work. And, spouses of exchange visitors, who are classified by visa symbol J-2, can apply for permission to work, whereas the spouses of nonimmigrant students, admitted under the symbol F-2, cannot work. The most important provision is section 212(a)(14), whose purpose is to protect the American labor market. This provides that those aliens coming to the United States to perform skilled or unskilled work must obtain a certification from the Secretary of Labor that there are not sufficient workers in the United States to perform the particular work and that the employment of the alien will not adversely affect the wages and working conditions of the workers in the United States similarly employed. The regulations pertaining to this section of law are very detailed. The 1968 Annual Report of the Immigration and Naturalization Service, table 4, page 34, shows that for the year ended June 30, 1968, the total number of nonimmigrant visitors for pleasure admitted to the United States was 2,042,666. The very careful safeguards that

Congress has erected in the law to protect the American labor market would go for naught if visitors for pleasure were free to take gainful employment during the time of their authorized stay. Construing the statute as a whole, we again arrive at the conclusion that a visitor for pleasure is not permitted to work and if he does, he has failed to comply with the conditions of his status.

For these reasons we hold that the respondents are deportable as charged and we will affirm the decision of the special inquiry officer and will dismiss the appeals.

**ORDER:** It is ordered that the appeals be and the same are hereby dismissed.

*It is further ordered* that, pursuant to the special inquiry officer's order the respondents be permitted to depart from the United States voluntarily within 30 days from the date of this decision or any extension beyond that time as may be granted by the District Director; and that, in the event of failure so to depart, the respondents shall be deported as provided in the special inquiry officer's order.