[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10311

_____

D.C. Docket No. 6:11-cv-00743-GAP-DAB


ARACELYS C. TORO,

                    Plaintiff - Appellant,

versus

SECRETARY, U.S. DEPARTMENT
OF HOMELAND SECURITY,
DIRECTOR, U.S. CITIZENSHIP AND
IMMIGRATION SERVICES,
CHIEF, ADMINISTRATIVE APPEALS OFFICE,
DIRECTOR, VERMONT SERVICE CENTER,

                    Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 4, 2013)

Before WILSON and COX, Circuit Judges, and VINSON,[*] District Judge.

WILSON, Circuit Judge:

Petitioner Aracelys Toro appeals the district court's dismissal of her complaint for failure to state a claim upon which relief can be granted.  Toro sought review of the United States Citizenship and Immigration Service's (USCIS) denial of her Form I-360 self-petition for adjustment to permanent resident status. USCIS denied Toro's petition on the grounds that it was contrary to the Cuban Refugee Adjustment Act of 1966 (CAA), Pub. L. No. 89-732, 80 Stat. 1161 (codified as amended at 8 U.S.C. § 1255 note).  Toro also claims that USCIS's decision violated the Fifth Amendment's guarantee of equal protection under the law.  We agree with the district court that the CAA's plain language bars Toro's self-petition, and we also find that a rational basis exists for treating battered aliens differently based on the immigration status of their Cuban spouses.  Therefore, we affirm the district court's dismissal of Toro's complaint.

## I.   FACTS & PROCEDURAL HISTORY

Toro, a native and citizen of Venezuela, entered the United States on January 7, 1996, as a B-2 nonimmigrant visitor.  On March 28, 2001, Toro married her husband, a native and citizen of Cuba, in Orlando, Florida.  Later that year, Toro and her husband filed Form I-485 applications for permanent resident status

---

[*] Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

2

under section 1 of the CAA.  Section 1 allows natives or citizens of Cuba and their spouses to become permanent residents of the United States after having been admitted or paroled into the country.

USCIS denied Toro's husband's Form I-485 application on account of his criminal history.  Because Toro was a derivative beneficiary of her husband's application, USCIS denied her application as well.  On January 31, 2008, Toro self-petitioned as the battered spouse of a Cuban alien under section 1 of the CAA to adjust her status to permanent lawful resident.

Since 1966, section 1 of the CAA—which is codified as a historical note to 8 U.S.C. § 1255—has been expanded by two laws amending the Violence Against Women Act of 1994 (VAWA), Pub. L. No. 103-322, tit. IV, 108 Stat. 1902 (codified as amended in scattered sections of 8, 16, 18, 28 and 42 U.S.C.).  The amendments allow the battered spouse "of any Cuban alien described in [section 1 of the CAA]" to self-petition for adjustment through what is commonly referred to as a "VAWA petition."  CAA § 1.  The current, amended version of section 1 provides, in pertinent part:

> [N]otwithstanding the provisions of section 245(c) of the Immigration and Nationality Act, the status of any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959 and has been physically present in the United States for at least one year, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, and

3

the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence. . . . The provisions of this Act shall be applicable to the spouse and child of any alien described in this subsection, regardless of their citizenship and place of birth, who are residing with such alien in the United States, <u>except that such spouse or child who has been battered or subjected to extreme cruelty may adjust to permanent resident status under this Act without demonstrating that he or she is residing with the Cuban spouse or parent in the United States.  In acting on applications under this section with respect to spouses or children who have been battered or subjected to extreme cruelty, the Attorney General shall apply the provisions of section</u> **204(a)(1)(J).**[1]  **An alien who was the spouse of any Cuban alien described in this section and has resided with such spouse shall continue to be treated as such a spouse for 2 years after the date on which the Cuban alien dies (or, if later, 2 years after the date of enactment of Violence Against Women Act and Department of Justice Reauthorization Act of 2005), or for 2 years after the date of termination of the marriage (or, if later, 2 years after the date of enactment of Violence Against Women Act and Department of Justice Reauthorization Act of 2005) if there is demonstrated a connection between the termination of the marriage and the battering or extreme cruelty by the Cuban alien.**

CAA § 1, as amended by the Victims of Trafficking and Violence Protection Act, Pub. L. No. 106-386, § 1509, 114 Stat. 1464, 1530–31 (2000) (in <u>underlined</u> font), and the Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 823, 119 Stat. 2960, 3063 (in **bold** font).

USCIS denied Toro's VAWA self-petition, reasoning that she did not have a qualifying relationship with a Cuban alien described in section 1 of the CAA.

---

[1] The note to 8 U.S.C. § 1255 (Supp. 2011) explains that section 204(a)(1)(J) "probably means section 204(a)(1)(J) of the Immigration and Nationality Act, which is classified to section 1154(a)(1)(J) of this title."

4

Because Toro's husband had been denied permanent resident status, Toro was not the "spouse . . . of any alien described in [section 1 of the CAA]." *Id.*

Toro filed an appeal with the Administrative Appeals Office (AAO), which dismissed her claim. The AAO found that "the language of section 1 of the CAA clearly indicates that the VAWA self-petitioner's Cuban spouse must be admissible to the United States and adjusted as a lawful permanent resident." Pointing to section 1's language, the AAO discerned five criteria for a battered spouse's Cuban husband to qualify as an "alien" under the section: (1) the alien must have been admitted or paroled into the United States subsequent to January 1, 1959; (2) the alien must have been physically present in the United States for at least one year; (3) the alien must have applied for adjustment to permanent resident status; (4) the alien must be eligible to receive an immigrant visa; and (5) the alien must be admissible to the United States for permanent residence. Toro's husband's criminal history rendered him inadmissible for permanent residence, and consequently Toro could not self-petition as the battered spouse of an alien described in section 1 of the CAA. The AAO also found that the Board of Immigration Appeals' (BIA) decision in *Matter of Quijada-Coto*, 13 I. & N. Dec. 740 (B.I.A. 1971), supported its reasoning.

In May 2011 Toro filed a complaint in the district court, alleging in her first count that USCIS's denial of her self-petition was contrary to law and

5

congressional intent.  In her second count, Toro argued that the denial violated her equal protection rights under the Fifth Amendment.  USCIS responded with a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(1), (6).  Essentially agreeing with the AAO's analysis, the district court found that the CAA's plain language governed the case, and dismissed both counts for failure to state a claim.  This appeal followed.

## II.  ANALYSIS

### A.  Count One: Interpretation of the CAA

Because Toro contested a final agency decision, the district court reviewed Count One of Toro's complaint under the Administrative Procedure Act (APA), 5 U.S.C. § 704.  The court interpreted section 1 of the CAA to bar Toro from self-petitioning.  This court reviews de novo questions of statutory interpretation.  *See Serrano v. U.S. Attorney Gen.*, 655 F.3d 1260, 1264 (11th Cir. 2011) (per curiam).

"The first step of statutory construction is to determine whether the language of the statute, when considered in context, is plain.  If the meaning of the statutory language in context is plain, we go no further."  *Id.*  (internal quotation marks omitted); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S. Ct. 2778, 2781 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

6

Both Toro and USCIS agree that a VAWA self-petitioner must have a qualifying relationship with a Cuban alien described in section 1 of the CAA. USCIS argues that a plain reading of section 1 reveals five requirements a Cuban spouse must satisfy to qualify as an "alien described in this subsection":

> [N]otwithstanding the provisions of section 245(c) of the Immigration and Nationality Act, the status of any alien who is a native or citizen of Cuba and who has been inspected and **[1] admitted or paroled into the United States subsequent to January 1, 1959** and **[2] has been physically present in the United States for at least one year,** may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if **[3] the alien makes an application for such adjustment,** and **[4] the alien is eligible to receive an immigrant visa** and **[5] is admissible to the United States for permanent residence** . . . . The provisions of this Act shall be applicable to the spouse and child of *any alien described in this subsection* . . . .

CAA § 1 (emphases and bracketed numbers added).

Toro's husband, USCIS contends, satisfies the first four requirements. He falls short of the fifth requirement, however, because USCIS denied his Form I-485 application. By contrast, Toro argues that her spouse needed to satisfy only the first two requirements, and that the remaining language in the sentence, rather than listing criteria, discusses the Attorney General's discretion to adjust a Cuban alien's status.

We agree with USCIS, and find that the remaining language, while certainly providing the Attorney General with guidance, also modifies which particular

7

aliens are "any alien described in this subsection." *Id.* Toro's argument proves too much, because the first two requirements also provide guidance to the Attorney General. We read each clause at issue to be an indispensable element of "any alien described in this subsection," because all five clauses specify what a Cuban alien must do to qualify for adjustment. It makes little interpretive sense to do as Toro urges us, and cleave the clauses into "requirements" and "guidance." Most conspicuously, a single sentence contains all five clauses. Two sentences later, the statutory language at issue appears: "The provisions of this Act shall be applicable to the spouse and child of any alien *described in this subsection . . . .*" CAA § 1 (emphasis added). The aliens "described in [section 1 of the CAA]" are Cuban aliens who may adjust to permanent resident status by virtue of satisfying every element listed above. Because USCIS denied Toro's husband's Form I-485 application, he does not qualify as an alien described in section 1, and Toro cannot self-petition under the statute.

Even if we were to find section 1's language to be ambiguous, the outcome of this case would remain unchanged because we owe *Chevron* deference to the BIA's decision in *Matter of Quijada-Coto*, 13 I. & N. Dec. 740 (B.I.A. 1971). *See Chevron*, 467 U.S. at 844, 104 S. Ct. at 2781–82. Under *Chevron*, if we find the text of a statute ambiguous, and Congress has delegated rulemaking authority to an agency, then we will generally defer to the agency's exercise of its formal rule-

8

making authority.  *See id.*; *see also Wilderness Watch v. Mainella*, 375 F.3d 1085, 1091 (11th Cir. 2004).

In the context of the Immigration and Nationality Act (INA)—of which section 1 of the CAA forms a small part—"determination[s] and ruling[s] by the Attorney General with respect to all questions of law shall be controlling."  8 U.S.C. § 1103(a)(1); *see I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 424, 119 S. Ct. 1439, 1445 (1999).  The Attorney General has vested the BIA with the power to provide, through precedential decisions, "clear and uniform guidance to the Service, the immigration judges, and the general public on the proper interpretation and administration of the Act and its implementing regulations."[2]  8 C.F.R. § 1003.1(d)(1).  Thus, the BIA "should be accorded *Chevron* deference as it gives ambiguous statutory terms concrete meaning through a process of case-by-case adjudication."  *Aguirre-Aguirre*, 526 U.S. at 425, 119 S. Ct. at 1445 (internal quotation marks omitted); *see also Quinchia v. U.S. Attorney Gen.*, 552 F.3d 1255, 1258 (11th Cir. 2008).  To the extent that the clause "any alien described in this subsection" is ambiguous, the BIA resolved the ambiguity in *Quijada-Coto*, to which we owe *Chevron* deference.  *See Aguirre-Aguirre*, 526 U.S. at 425, 119 S. Ct. at 1445.

---

[2] The Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, abolished the Immigration and Naturalization Service (INS) and moved most of its functions to the newly created Department of Homeland Security (DHS).  USCIS, an agency within DHS, now administers most of the INS's former duties.

In *Quijada-Coto*, the BIA affirmed the denial of Quijada-Coto's petition for adjustment. 13 I. & N. Dec. at 741. Quijada-Coto, a native El Salvadorian, argued that she could adjust her status under section 1 of the CAA because she was the spouse of a Cuban alien described in section 1. *Id.* at 740. Quijada-Coto's husband, like Toro's, had been denied adjustment of status because of a narcotics conviction. *Id.* The BIA held: "After careful consideration, we conclude that Congress did not intend to apply the benefits of the [CAA] to the spouse of an alien described in the Act, when the alien himself has been denied adjustment of status under the Act." *Id.* at 741. The holding in *Quijada-Coto* therefore settles the question of which Cuban aliens qualify as aliens described in section 1 of the CAA: a section 1 alien *must* be admissible for permanent residence.

Toro points out that the BIA decided *Quijada-Coto* in 1971, decades prior to the VAWA self-petitioning amendments. We fail to see the relevance of this observation. The language at issue—"any alien described in this subsection"—and the preceding, modifying language have remained unchanged since 1966. A 2013 alien who is "described in this subsection" is the same as a 1966 alien who was "described in this subsection." CAA § 1. Therefore, just as Quijada-Coto did not

10

have a qualifying relationship with a Cuban alien in 1971, neither does Toro in 2013.[3]

## B. Count II: Toro's Equal Protection Claim

With regards to Toro's equal protection claim, we review de novo constitutional challenges to agency orders. *Ala. Power Co. v. F.C.C.*, 311 F.3d 1357, 1367 (11th Cir. 2002). Through its Due Process Clause, the Fifth Amendment guarantees equal protection under federal law to every individual in the United States, including aliens. *Fernandez-Bernal v. Attorney Gen.*, 257 F.3d 1304, 1311 (11th Cir. 2001); *Yeung v. I.N.S.*, 76 F.3d 337, 339 (11th Cir. 1995) ("The constitutional guarantee of equal protection under the law has been held applicable to aliens as well as citizens for over a century."). At the same time, the legislative power of Congress over the admission of aliens is more comprehensive than any conceivable subject. *Yeung*, 76 F.3d at 339. We will therefore uphold an agency decision that distinguishes among groups of alien unless there is no rational

---

[3] Toro also argues that another BIA decision, *Matter of Milian*, 13 I. & N. Dec. 480 (B.I.A. 1970), settles the question in this case. In *Milian*, a Cuban alien married his non-Cuban spouse *after* adjusting his status under section 1 of the CAA. *Milian*, 13 I. & N. Dec. at 481. The non-Cuban spouse's petition for adjustment had been denied "since the applicant's marriage followed [the Cuban alien's] acquisition of that status." *Id.* at 481. The BIA reversed the decision and allowed the non-Cuban spouse to adjust her status after the marriage. *Id.* at 482. From this holding, Toro extrapolates the rule that the Cuban alien's adjustment status does not bear on whether the Cuban alien qualifies as an alien described in section 1. Yet Toro misreads *Milian*; the case simply holds that a qualifying relationship for purposes of section 1 may be established after the Cuban alien's adjustment.

11

basis for the classification. *Resendiz-Alcaraz v. U.S. Attorney Gen.*, 383 F.3d 1262, 1271 (11th Cir. 2004).

Under rational-basis review, the classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Fernandez-Bernal*, 257 F.3d at 1312 (quoting *Stanton v. Stanton*, 421 U.S. 7, 14, 95 S. Ct. 1373, 1377 (1975)).

Toro argues that distinguishing between battered spouses on the basis of a Cuban spouse's adjustment status violates the Fifth Amendment's equal protection guarantee. There is no rational basis for the distinction, Toro continues, because the purposes underlying the VAWA self-petitioning provisions are to provide a means of escape for immigrants who are the victims of domestic violence. Again, we disagree.

The VAWA self-petitioning provisions have a narrower rationale than providing a means of escape for all victims of domestic violence: "The purpose of permitting self-petitioning is to prevent the citizen or resident from using the petitioning process as a means to control or abuse an alien spouse." H.R. Rep. No. 103-395, at 37 (1994). If the abusive Cuban spouse has been denied permanent resident status, as is the case with Toro's husband, he can no longer threaten to withhold immigration sponsorship from his non-Cuban spouse. To distinguish

12

between non-Cuban aliens on the basis of a Cuban spouse's adjustment status is adequately rational, and not the least bit arbitrary.  We therefore conclude that USCIS's denial of Toro's VAWA self-petition did not violate the Fifth Amendment's equal protection guarantees.

### III. CONCLUSION

Under a plain reading of section 1 of the CAA, there are five requirements for a non-Cuban's spouse to qualify as "any alien described in [section 1 of the CAA]": (1) the alien must have been admitted or paroled into the United States subsequent to January 1, 1959; (2) the alien must have been physically present in the United States for at least one year; (3) the alien must have applied for adjustment to permanent resident status; (4) the alien must be eligible to receive an immigrant visa; and (5) the alien must be admissible to the United States for permanent residence.  Because Toro's husband did not satisfy the fifth requirement, Toro cannot self-petition under the VAWA amendments to the CAA. In addition, USCIS's distinction between non-Cuban aliens on the basis of a Cuban spouse's adjustment status does not violate the Fifth Amendment's equal protection guarantees.

**AFFIRMED**.

13